Move to the next case on the argument calendar, which is IV Solutions, Inc. v. Empire Healthchoice Assurance, Inc. Counsel for that case could please come forward. I'm just going to focus the argument on two particular issues. Obviously, we'll answer any questions that the court has. The first question I want to ask or focus on is whether there was ever even a denial in this case, much less equivocal or unequivocal, until 2014. And then the second question that I want to focus on is the leave to amend issue as to why leave was not granted and, in our view, should have been. In this case, the district court, unlike the Pacific Care case, they both cited the same statute with respect to the statute of limitations. There's no limitations in the contract, so we're going to apply a reasonable time. In our view, in the Pacific Care case, they appropriately reconciled that with meaning that there has to be an unequivocal denial. And I find the cases don't necessarily always tie them together, but the reality is that it's fair to say, and I think the way it's reconciled, is that it is unreasonable to believe you're going to get paid after there's an unequivocal denial. And I think that really is the central issue with respect to what triggers the statute of limitations. And where it gets confusing, it's also an issue with respect to tolling. I thought this case, remind me if I'm not remembering the record right. I thought in this case, though, you got partial payments on each of the claims? Yes. There were payments, and then there were further payments as late as July of 2013. Okay, but to me, that just seems like a different case that takes us out of the unequivocal denial realm, because the unequivocal denial cases, as I understand them, it's more where you haven't been paid yet, and so you're kind of, there's a back and forth, and you're waiting to see what happens. But when someone says, here's the check, I know you sent me a bill for $100,000, but here's a check for $50, and, you know, I'm presumably representing that that's the payment that I think you're entitled to. I don't know. Why would you think that that's not? They've denied your claim to the extent that you wanted more than the $50 that they gave you. Well, again, and in this case, so essentially, in response to the Court's question, in this case, there is nothing of record as to what was said in 2012. There is a record in the complaint that says that they got less than what they were entitled to. Respectfully, I think that the unequivocal denial, especially, and again, this goes into the issue of the amendment, had we been able to plead facts, more facts relating to the health care industry, which is unusual, is frankly not uncommon to receive a partial payment and then further discussions, both sides recognizing this is what we're paying, we need some further records. It is a back and forth process. So, Your Honor, I don't believe that mere short pay should be, at least in the health care industry, in this kind of situation, dealing with an out-of-state network. Counsel, you alleged in the complaint that Empire agreed to pay you your billed charges. That's correct. So you allege they agreed to pay you everything you billed. Yes. And so why under Section 1657, the second clause, isn't this a situation where this calls for the payment of money and it can be done instantly and it must be performed immediately upon the thing to be done being exactly ascertained and your allegation is they agreed to pay everything that you billed, which can be exactly ascertained at the moment you bill it. Well, when ascertained, assuming, again, that's why the industry is important. If this were a delivery of lumber and we gave an invoice, there could be no reasonable dispute that all is due. But, again, the facts that we wanted, and I didn't have the opportunity, but I outlined at the end when I talk about the amendment, it is not uncommon, even though you say you're going to get billed charges, it will say, well, what were your billed charges? I mean, that's an issue they may ask for. But they may ask for more medical records, or they may ask for what exactly was this work that needed to be done? What was this code? How did it relate to this? It's just the industry itself, the billing system, every time there's an inquiry, it goes back, it's 30 to 60 days, back and forth, is the kind of allegations that would have been made to explain and to address Your Honor's point. Because that's the whole point, is that I think the case law talking about that particular statute says it is circumstantial. You have to understand the setting and the industry. And I think that the Court cut off the opportunity to at least have the opportunity to explain why that statute did not apply in this case, answering the very questions that Your Honor has raised, because they simply just didn't have the opportunity because that was not the address, I'm sorry, did you have one? No. Okay. So essentially, I think that it is critical both to the issue of whether or not there was a denial that triggered the statute of limitations, and then whether or not there should have been leave to amend. Both require an understanding of what the surrounding circumstances and what particular industry you're dealing with. And the trial court simply never had the opportunity to hear that information or to even see those allegations. In terms of what exactly you said you wanted to do in your amendment, tell me what exactly you said you wanted to add as allegations. Sure. We could have actually gone through each specific. No, no, what you told the district court. We didn't tell because we didn't have the opportunity. What happened was. So what do you say in your brief here? In the brief we outline essentially an example of the types of issues without even going through, I didn't put in exact records as to what the records showed, but the kinds of issues that we would look at is that billing in these situations are not cookie cutter, first of all. Secondly, there's delay in this issue. A lot of times billings are actually delayed. You've got dates of service, and then billings are delayed. You wait until all the service is finished. You hold off until treatment is completed. Since not a contract member, this is an out-of-state, out-of-network provider, oftentimes insurance companies have additional requests for information, and that can take a long time. And then we further would allege that every time a request for information, which is not uncommon, it takes 30 to 60 days. Bottom line, what we would have explained is that the court was bothered. It just simply cannot be possible that 17 months after date of last service you're not getting paid. And that would be absolutely accurate if you were dealing with a delivery of lumber and a bill. And that's really the difference. Well, and I think I would understand your argument if you had never been paid anything, and, you know, you were just kind of you weren't getting a denial. You just kept getting a runaround basically, right? Well, we need more information. You supply more information. And then they say, well, we need more information. Well, we're thinking about it. And so you're getting strung along. And in that context, I understand why you would say, hey, we need to show you that in this industry at least, getting strung along for 17 months is not uncommon, and it wasn't unreasonable for us to think that we were still going to get paid at the end of that. It just seems to me it's a different scenario where you send the bill, and your contention is that, no, you're entitled to 100 percent of that, right? That's your assertion is that the contract was they agreed to pay us 100 percent of what we sent them. So in that scenario where they send you a payment, it just seems to me it's clear. They're saying, no, we're not, we don't think you're entitled, whatever you think the contract is, we don't think you're entitled to this. This is what we're willing to pay. Your Honor, I understand the issue, and I agree that I still think that understanding the industry with allegations would be helpful, but on top of it in this particular case, it's not just a matter of paying and that was the end of it and getting the runaround. We did cite some very specific communications where just the opposite was said. It wasn't an unequivocal denial. It was in April of 2012, we're reviewing the claims, and as the complaint indicated, that's a term of art. In April of 2012, they said there was a confirmation that the services were provided 100 percent. Working on processing claims as late as 2012, and then in July 2013, within the four years of the action being filed, they said we're repricing and we're going to make additional payments. So you got some payments in September of 2013. We got some additional small payments. And that was less than four years after, before you filed. Yes. The July 13 communication, if one assumes that that was not being, you know, no question, and actually there are cases that say there's some point where you just can't put your head in the sand is what the court, I think, is suggesting. In this case, both because it's not that abnormal in the industry to get that string strung along, coupled with the affirmative statements that were being made, I think that at the very least the IBS should have been provided the opportunity to make that showing to the court and allow the court to make that determination. Yeah. There's a line of California cases, I think, but tell me if I'm wrong on this, that says, you know, essentially when you get that initial denial, let's just say in this context, it's more in the other case, but let's just say you get an initial denial. They just say, you know what, we're not paying this. And if you'd like to have us reconsider, feel free to provide us more information. We have a line of California cases that says, no, the claim accrues when they tell you no, because we don't want to discourage insurers or other, you know, payers from allowing some kind of an internal appeals process. But the claim accrues, and because it's a four-year statute of limitations, that's plenty of time for all this back and forth. We're not going to be worried about your sort of getting shut out. And so if that line of cases applies in this context, it seems to me that's the district court could say, then it's irrelevant. What you wanted to add to the complaint doesn't matter if I treat the partial payment as the equivalent of that initial denial, and then your claim accrued and you had four years after that to do this back and forth. And I will be addressing it, if you don't get tired of me, in the other case, in a little more detail about when you get an EOB, whether or not that actually triggers it. But the cases really don't focus. It could be an EOB that says we're paying you a dollar, we're paying you zero, we're paying you 90 percent. It's really the EOB and whether or not it's a statement that that's their last position. In this case, according to the complaint, there's nothing that's stated. There's just the short payment in April of 2012. There's no evidence that they, you know, did they ask for more information, did they say this is all we're paying. All we have in this case is the short pay. And standing alone, Your Honor, I think under the circumstances, that would not be, even under the other line of cases, an unequivocal denial. That's what I guess I don't understand. I think I understand if they send you a letter back saying thank you, we received this outrageous bill, and there's no way we're going to pay this unless you give us more information, and it's kind of left in limbo and then you get involved. But when you send a bill and somebody says here's the payment that I think you're entitled to, it seems to me that's the equivalent in the EOB context of the sort of denial. And then, but feel free, if you think that we've short paid you, feel free to avail yourself of our sort of internal appeals process. That's fine. But your claim has accrued when you get that check and realize, oh, no, they've not given us our full payment. I think the statute triggers when there is this unequivocal denial, a short payment. And, again, I'm bleeding over to Pacific Air because that we know what was communicated. In this case, I never or IBS never had the opportunity, because if they made a short pay in April of 2012 and they not just invited or if you want to appeal, for all we know, and the record is not clear, they may have said, but we need these further records to further consider this. Or we just don't know. On the basis of the complaint, it's not a situation that Your Honor is pointing to where they say, this is it, this is what we think we're paying, and it can be viewed as an unequivocal denial. Well, it's your complaint. I mean, you were in a position to allege whatever you thought was necessary in terms of they – I mean, because I gather what you're saying is that we should interpret the partial payment as, here's a good-faith sort of down payment on what we think is ultimately owed. We recognize that we're going to have to pay you more later. That's not the sense I have. I'm not asking the court to interpret it one way or the other. I'm asking the court for an opportunity to elaborate further, because seeing where the district court's focus was, IVS should have been given that opportunity, because we don't know. I can't indicate off the record, and that's why the courts are so liberal about granting. But can I point out, though, what you gave us at the end of your brief, your blue brief, in terms of what you would add had nothing to do with what I was talking about. That's correct. So I don't see why you would be – why would we give you now an opportunity to amend your complaint to fix this problem when you should have laid out whatever you thought was relevant on the point that, yes, they gave us a partial payment, but they made clear that this wasn't, in their mind, the end of the story, and they were going to give us more money later. What I put at the end of the brief was hypothetical. I did not want to go outside the record, because I was never given the opportunity to go outside the record. But these are – all the issues that the court addressed are issues that could have been raised or could have been discussed. The only question is, given what the court was faced with in the complaint and understanding the industry and based on the kinds of issues that could be raised, the question is would it have been futile. And I think that a short pay standing alone – that's all we know – just doesn't do it. So I appreciate it, Your Honor. Thank you. Okay. We'll give you some time for rebuttal. All right. Let's hear from counsel for the defendant. Your Honor. Good morning, and may it please the Court. My name is Todd Kim, representing Empire Health Choice Assurance. The Court should affirm because the complaint, by its terms, shows that this suit was untimely. There are many reasons why this is so. Of course, we argue in our brief that a two-year statute of limitations should apply. But let's continue the conversation we were having, assuming there's a four-year statute of limitations, and hopefully we'll get to the two-year. You're absolutely right that the partial payments would be at least a point at which the limitations period would start. We think it's actually earlier than that, per the comment about the 1657 immediate payment rule. I heard counsel respond to that question by saying, well, this industry is different. The law doesn't change depending on the industry. Here we heard the concession from my opposing – from opposing counsel that the contract said – isn't there – that says, you know, if the time for payment is not stated, and here there's no allegation that it was like, you know, invoice, pay within 30 days, we don't know. But if no time is stated, then it's sort of a reasonable time, and it seems to me it would very much matter what's reasonable in that industry. If it's common for, you know, 17 months to elapse between sending of the invoice and receipt of payment in a particular industry, then it doesn't seem crazy to me that a party in the plain of shoes would not feel like they had been stiffed, even though they're still waiting all these months later. Your Honor, there's a lot there. I hope to get the chance to unpack it. Whether or not someone feels like they're being stiffed does not go to the accrual of the claim. It goes to equitable estoppel, which we can also discuss. But there are two sentences in Section 1657. The first sentence is what you've been talking about. The second sentence is what we believe applies here. That section expressly indicates that when the thing to be done is capable of being done immediately, and it specifies the payment of money only, which is what we're talking about here, then it has to be done immediately once the thing to be done is exactly ascertained. That's the language of the statute. Counsel, one of the things that troubles me about this case is that the district court, on a motion to dismiss, dismissed the complaint on statute of limitations grounds and did it with prejudice in circumstances where in general pretty much everybody's given leave to amend unless everything is just totally frivolous. I mean, this strikes me as a very unusual procedural posture. And I understand your arguments, but why was this fair to the plaintiffs to, A, have this done on a motion to dismiss and then, B, not even give them any leave to amend? Your Honor, I understand the concern, and it is true that it is unusual for a complaint to be properly dismissed. I mean, I haven't seen everything in the world, but I haven't seen this. I think it has happened, Your Honor. I'm sure it has. But the more important point is that it should happen when the complaint by its terms shows that the suit is untimely. That itself is going to be rare, but I think that's what this complaint does. But that combined with no leave to amend at all. I mean, if it's absolutely true that nothing they could say could save it, the district court can enter the same ruling after an amendment. But it just strikes me as very unusual, potentially very unfair, to do what normally is a fact-intensive type of inquiry that's normally done on summary judgment on a motion to dismiss and then just with prejudice. I understand the concern entirely. Of course, this Court indicated in cases like Reddy that whether there's to be leave to amend, the amended complaint has to be consistent with the original complaint. I understand that. You're saying, if I understand your argument, that if hypothetically a complaint said personal injury case, the accident occurred on August 31st, 2012, and there was a five-year statute of limitations and the complaint was not brought until 2019, then the Court doesn't have to give leave to amend because it's clear from the face of the complaint that it would be a futility to go through, that there's nothing that could be said that would save the complaint. So the question is, why do you think this fits into that kind of clear-cut situation? Thank you, Judge Rehkoff. So first, returning to the four-year statute of limitations, there is the immediate payment rule. So if the immediate payment rule applies, then once IVS sent bills and Empire was fully capable of paying bill to charges, and that is the contract we've all heard, that is when the duty to pay arose. When the payments were not made, in fact, when small payments, in fact, were made, certainly IVS could have gone to court. There's no way that the California courts would say that Empire could unilaterally keep IVS out of court by stringing them along. That wouldn't be fair. That's not the law. But why in this context, why shouldn't they be allowed, for example, to allege that normal trade usage, normal customs of the trade, mean that even if you're promising to pay billed charges, that billed charges is a term of art and that when you're looking at billed charges and you're billing big numbers in this industry, there's all this back and forth. And paying a small amount doesn't mean it's the end of it. And the trade usages, you have this dialogue that goes on for a year or two years. I mean, maybe that's nonsense, but why shouldn't they be given the opportunity to make that allegation? When this case was concluded on a motion to dismiss, not on a motion for summary judgment after they had the opportunity for discovery. Your Honor, because those allegations would not be pertinent to the legal viability of this claim. So under the statute, and the statute does not change depending on the industry. The statute is categorical. Under the statute, when the thing to be done is just the payment of money, you can bring suit immediately. That's the accrual of the claim. It's what ensures that someone who's not getting the money they are owed can get to court and not allow themselves to be strung along if they don't want to. Even if what they would allege theoretically in an amended complaint is that industry practice is there's always a lengthy back and forth when there are big numbers involved between the provider and the insurer or the provider and the payer? Well, to be clear, this is an unusual contract that's alleged here, even for this industry. If there's to be a contract, normally that contract would speak to dispute resolution. But the contract that they allege here is very unusual. Under their contract, there was no such thing. Paragraph 46, according to them, sets forth verbatim the terms of the contract. There's nothing there to dispute resolution. So it could be that in most instances in the industry, there would be this time for back and forth that would be built into the contract such that there would be no breach until after that. It's possible. I mean, as a theoretical matter, there could be an allegation that that's built into the term billed charges in the industry, theoretically. We just heard from counsel that's not so. He agreed that once the bills were sent, Empire was obligated to pay. That's what I heard him say up there today, and I think that's what the complaint says. So under at least this contract, the instant when the bills were sent and they were not paid, the time for payment was triggered, and we know that. And that's the four-year statute of limitations. Of course, even if the immediate payment rule didn't apply, we also have the district court's analysis, which indicates that the time between when Empire received the bills and the June 23, 2013 cutoff for the four-year statute of limitations passed was too long as a matter of law to be reasonable. Let's assume for the sake of argument that we agree with you that the complaint as written, that it should be the second clause of 1657 that would apply and that that would be an alternate ground for affirming the district court's decision, but that we viewed the district court's basing its decision on the first clause of 1657 as in error. Wouldn't that be a reason for saying that perhaps that may have colored the district court's decision not to allow amendment and that that might be a reason to give the district court an opportunity to reconsider whether or not it ought to allow amendment? No, Your Honor. Of course, this court's review is de novo. And if amending would be futile, there would be no reason to send the district court and the parties back. That's absolutely true. If we were to determine that amendment would be futile, there would be no point in sending it back. And my point is that amendment would be futile because this complaint, by its terms, already shows that the suit was untimely and no amendment could cure that consistent with the allegations of this complaint. So we've been talking about the four-year statute of limitations, but if I may, I'd like to take a moment to talk about why I believe the two-year statute of limitations should apply as a matter of law, rendering our entire discussion here irrelevant. The two-year statute of limitations and the four-year statute of limitations are set forth in California Code of Civil Procedure Sections 337 and 339, and the key under both the statutory language and the California Supreme Court case law is whether or not the later writings are contracts in themselves. So our complaint affirmatively alleges, and this is not disputed, that this contract at least initially was oral, and that, standing alone, would mean that two-year statute of limitations would apply. The only way that IVS can even contend that the longer statute of limitations should apply is by saying that this oral contract was documented and memorialized. And that's what they say. That's what they say. That's a quote from the complaint. So we'll take that at its word, documented and memorialized. The meaning of that allegation is that the later writings provided evidence of the earlier oral contract, but the California Supreme Court has made express, in cases like McCarthy and O'Brien, that it is not sufficient that a later writing merely provide evidence of the earlier oral agreement. That is not enough. And for that simple reason, the two-year statute of limitations applies, and there is no dispute that if it does, this suit was untimely. That is an alternative ground upon which this Court can affirm. Again, amendment wouldn't be – would serve no purpose. I thought, though, that the – well, first of all, we don't have in the record the written – whatever these written – were they retroauthorizations? Is that what we're talking about? They are so characterized. That's right. We don't have the actual things before us? No, we don't. We just have what's in the complaint. That's correct. But doesn't the plaintiff allege that at least the time period covered by one or more of those retroauthorizations is broader than the time period covered by the initial oral agreement, such that what they are suing on, in fact, is whatever is in that written retroauthorization? No, Your Honor. What they are saying is that the oral contract had no time limitation, that the written retroauthorizations – and this is another point I wanted to get to – are inconsistent with the oral contract in that they are time limited and that they presuppose that authorizations were necessary when, in fact, the supposed contract didn't speak a word about authorizations. So this is a separate point, which is that the later writings could not be a basis for the contract action when they are inconsistent with the terms of the contract. I'm sorry. I thought what they had said about the initial oral agreement was that it only covered treatments between point A and point B. No, Your Honor. And then the subsequent written authorization kind of expanded that so that it was a longer period. That's not correct? No, I don't think that's correct. They say that these are the verbatim terms of the contract. They're verbatim. This is in Paragraph 46. IVS and Empire entered into a contract pursuant to which IVS agreed to provide the services to Empire's insured MM, which had been prescribed by MM's physician, and Empire agreed to pay IVS its billed charges for such services. Stop. There is no time limitation there. Well, I mean, part of the problem is that we're trying to parse through this argument on a motion to dismiss as opposed to a motion to dismiss where all that's required is notice pleading. Yes, Your Honor. A few points in response to that, though. The first is that, of course, we're looking to whether or not the complaint plausibly shows us an entitlement to relief. They have never even alleged, let alone plausibly, that the later written memorializations are contracts in themselves. Alleged where? Either in the complaint or any of their briefing. They have seriously avoided so characterizing them. Instead, they have indicated that the later writings were memorializations or documentation of the earlier oral agreement. And, indeed, the complaint never sets forth any basis upon which any court could conclude that the later writings were contracts in themselves. There is no word of offer acceptance, no meeting of the minds, no consideration. Indeed, the later writings only added to the supposed earlier oral authorizations. So there would be no separate consideration there. Well, I mean, if what you're saying is correct, I mean, wouldn't that be something that typically someone would have the opportunity to amend on where the allegation is that the complaint doesn't lay out enough as opposed to that the complaint is inconsistent with that allegation? Normally, that would be true. But, again, I have to go back to the point. This complaint is affirmatively inconsistent with any theory that will allow them to invoke the four-year statute of limitations. And so for a few different reasons. First, as I indicated, the written authorizations were affirmatively inconsistent with the supposed contract. They can't now change that. The Reddy case and others indicate that any amendment would have to be consistent with the original complaint. That's number one. Number two, this complaint by its terms says that the later writings merely document and memorialize the actual contract, the oral one. If that's the case, and, again, McCarthy and O'Brien and other cases make this clear, it's not enough. It's not enough merely to provide evidence of an oral agreement in order to try to get the four-year statute of limitations. That wouldn't be consistent with the statutory text, which requires that the contract action be founded upon the written instrument. These writings were not according to the terms of this complaint. Okay. Thank you. Thank you, Counsel. You have a little bit of time left for rebuttal. I'll start speaking here. Two questions. On the two-year issue, AMEN stands – we have to distinguish between statute of frauds and statute of limitations. For purposes of statute of limitations, the AMEN case says, you don't even need a document signed by the party. It's a memorialization of what went on before. The O'Brien case and the other case that they cite are situations where the writing doesn't have the terms that you're relying on. One of the cases said, oh, you'll be the superintendent, but it said nothing about compensation. So I don't think those cases are distinguishable. The final point is, with respect to 1657, you have to harmonize – I think we have to harmonize this with all these other cases. It can't be that just an EOB sent out with a payment triggers a payment in these kinds of situations. In Vishnodev, it wrestles with the issue of whether or not that is an unequivocal denial in April of 2012. And the Leonard case is consistent under 1657. It says there has to be a demand and a refusal. Now, is a partial payment refusal? That's the argument. I don't think in this industry a mere refusal to pay – actually, a mere short pay constitutes a refusal. Leonard requires a refusal commenting on 1657. You think the short pay is just kind of the opening bid in a negotiation as to what we're finally going to arrive at? I'm going to acknowledge, Your Honor, that on the basis of what's in the complaint, the answer is we don't know. That's the truth. The trial court didn't have that information. And the fundamental unfairness was no oral argument, basically a ruling where it rejected the reasoning of both sides, said it's a different statute of limitations, never an opportunity to even explain why a motion to amend would be granted. But since we can review de novo whether your proposed amendment would be futile or not, then we can look at what you've said in your oral argument now and in your brief is what you would say in your amended complaint. Is there anything else you would say in your amended complaint that you haven't told us? All I would do that I've not done, Your Honor, is while I drafted the complaint, I would also look for those communications to see if they were requesting more information or were they giving the runaround. In other words, a little more detail. But I think that you have the gist of what would be said in that amended complaint, aside from I think it is critical to explain what happened in April of 2012. Maybe I have not really fully followed. You would say in your amended complaint, first, that the industry practice is to extend these situations over a long period of time with a back and forth. And secondly, that that was true here or you don't know that it's true here? I know that it's true here, that aspect. What I don't know is true is whether, candidly, in April of 2012, was it something that could be construed as an absolute denial or just a short pay. But I would want to address that issue in the amended complaint. All right. Thank you very much. Thank you, counsel. Case just argued as submitted.
judges: Watford, Rakoff, Bennett